And we'll turn to the third case, U.S.A. v. Antonio Ballard. Mr. McLaughlin. Thank you, Your Honors. Devin McLaughlin for Defendant Appellant Antonio Ballard. I'm going to be focusing my argument on the improper prosecutorial summation. As the Court is aware, it's a three-pronged test. First, what the severity of the improper summation was. Two, whether there are curative instructions appropriately and adequately dealt with it. And three, whether absent the misconduct, the conviction was certain. With regard to the first prong, Your Honors, in terms of the severity of the underlying prosecutorial summation and the misconduct therein, our submission is that it's on the high end of the spectrum. Not only do you have it starting right at the beginning and continuing through the end, being repeated, also the tenets that were violated, frankly, span the spectrum of what improper argument could be. This isn't one of those cases that we've seen where there's a stray remark in there. It began at the beginning, went through the end, and was of sufficient weight that our hope is that you find it on the high end of the severity spectrum. The government and myself in the briefs obviously went ahead and detailed different statements. They're there. It starts with pieces of meat. Well, let me say it this way. There are a couple that the government goes ahead and acknowledges were improper. It then goes ahead and takes issue with a number of the ones I identified as improper saying that they aren't. And I actually set this forth in my reply brief. I think it's kind of telling the government's attempt to rationalize some of them because you end up listening to that. And actually, I think the proof in the pudding is that it doesn't cure these. For instance, the long soliloquy about the victim and how the victim has gone through hell understandably. And- That was not objected to. That was not objected to, Your Honor. None of- That's the problem here. I mean, the two misstatements that the government acknowledges, the mischaracterization of the defense and the allusion to the rules of evidence or evidentiary rulings preventing them from putting forward certain evidence, those were both objected to, and I think the government acknowledges the error there, right? Right. Yep. Everything else, the piece of meat, the deadbeat, the not a real man, the Genghis Khan, and the TM's progress, none of that was objected to. Right. All right. So, you know, the district court didn't have an opportunity to really consider this, right? Correct. And we defer a lot to district judges who hear the summation and are in a good position to assess whether or not it . . . what kind of effect it had on the jury. The court considered your two objected to summation comments and it didn't think it was enough. But how do you want us to look at now those two plus five unobjected to comments? And what I posited, and I think it is the appropriate way to do it, Your Honor, based on the circuit's precedence, is that if you have an objected to argument, an objected to comment, once you have . . . and this court finds that that was improper, and here obviously  In order to assess the impact of improper summation, you can't logically isolate, I'm just going to look at what the impact of that one was. Because the court has said we have to look at what the cumulative impact of all improper comments are. And so understanding . . . I'm concerned with that, and I'm not suggesting it happened here, but it would allow defense counsel to make one objection, remain silent during a host of other comments made by the district court could have either cautioned the government to stop, given a curative instruction, etc. So I'm not quite . . . I understand that we have to look at the summation as a whole, but I'm not sure that we treat this as if you had objected. In terms of the notion that a defense counsel would try to position his case best for appeal by objecting to only one, and therefore letting the other one slide, that's quite a risky proposition. How, if we're going to be prepared to look at it in its entirety, then? Because . . . Why don't you tell us what you think warrants a retrial here? So, Your Honor, looking at all of the different pieces, and you went through the iteration of all the different statements made, we get to the point where, okay, severity of the case is on the high end of the spectrum. We look at the . . . Well, I'm not sure you've convinced me that all of them are objectionable. So, Your Honor, in terms of going through each one on making them objectionable, so I start out with pieces of meat, and I talked about this in the reply brief, which is that in a child sex trafficking case, it is clear that one has to be careful about not improperly invoking the passions of the jury, and pieces of meat has no other intent other than to do that. And so the government says, well, wait a second, on back pages, you can try to sell pieces of meat, so isn't that exactly the same thing? And I say, listen, if you want to use the word widgets, fine, you know, in terms of it can be used commercially, but pieces of meat has a meaning to jurors in terms of them being treated that way. And so that's the reason . . . It's a strong statement, but we have allowed strong statements in summation and not found them to violate the fair trial right. I mean, you know, there are any number of cases where we could almost talk about stronger comments. The one that always resonates with me is we tolerated the government in a drug case talking about the collapsed veins of junkies. So I'm not sure why this is objectionable or why it's anything other than a strong but not unfair statement in this case. So, one, in most of the cases that we see this analyzed, it was often viewed as a stray remark. You know, it's certainly a purposeful remark, but it's an isolated instance. And this kind of gets back to what we were talking about earlier, is what happens when you have one, two, three, four, five, six, seven, eight of them as they go through? And absolutely, if your honors decide that the one through five, the unconceded were not in fact inappropriate, then that argument starts losing muster in terms of looking at the cumulative aspect. Let's talk about the ones where the government concedes error. It mischaracterized the defense and suggested that you had framed, that the government, not just the witnesses, had somehow framed the defendant. And the court said in front of the jury that it didn't hear you say that. So to that extent, tell me why, with the judge basically saying the government's wrong in front of the jury, that's a problem. Your Honor, what he said is he's arguing from what you did say, that he believes that's what you wanted the jury to believe. I didn't hear you say that either. So yes, he says those words didn't come out of your mouth, but I think that's what he's saying that he wants, you know, that you want the jury to believe. Yeah, but it ends with, I didn't hear you say that. I mean, usually there are a few things as harmful to the government as having the court say that they've mischaracterized the record. And then what the government does is go back. The irony of the attempted cure in that case, Your Honor, was that the government then goes back and actually elaborates on their conspiracy theory in terms of- Without objection. Without objection, following it, Your Honor. But the, and I think the government conceded this, and it's certainly consistent with existing precedent, that the notion that a juror's going to have to lose their faith in their local police community in order to be able to go ahead and acquit this person, that's the secondary error there. One error is mischaracterization, but the secondary error is you're going to have to lose faith. And so it exacerbated it. And then when we get to the rules of evidence, Your Honor, the judge below, defense counsel said that's totally improper, the rules that prevent him from doing something else. And the court says, well, I'm not sure if it is or not. I mean, in other words, the first words out of his mouth are ambiguous in terms of whether or not that, in fact, was a violation. And so in terms of curing at least those two improper comments, Your Honor, I would submit that it wasn't sufficient to go ahead and cure them. And the government obviously also relies on the generic statements at the end, and the circuit law has been pretty good about they really need to be directed towards what the errors were. You want to address the last point of analysis, which is the likelihood of conviction absent the error. The three women in this case, the three minors, testified and inculpated your client, but more to the point, there was corroborating evidence of his receipt of money and other things. I mean, I understand completely that this is a case in which the minors who were prostituted demonstrated in one way or the other some willingness to engage in that behavior. Nevertheless, it's a crime for an adult to be involved in the prostitution of minors, and there is corroboration for him having been involved in it. How is this not a case in which the evidence is overwhelming? So yes, the test is certainty. And so as opposed to usually, I'm in the judgment of acquittal, et cetera, et cetera. So it's not construed in the light most favorable to government, it's was it certain? And we have a story by three young ladies about what they say Mr. Ballard's involvement was. The defense theory of the case was these three young ladies got together and conspired to make this up because I've got TM stuck in an institution who A, is angry with Ballard, B, is angry because we got into this big fight, B, is institutionalized, C, is in potential trouble, not that she knows that or doesn't know, but potential trouble in terms of being the one that effectively ran this because there was pretty good evidence that it was undisputed that she was doing this beforehand and that she was relatively street savvy on that front and that she lied to the investigator when she first talked about it and the jury frankly found that she wasn't believable on some things because they didn't find that they used force or threat because there was an acquittal on that piece. So, um, the, the, the, the, the statements of the three girls prove nothing in and of themselves because they're consistent with the defense theory. So then you get to what the government points to. Well, there's so much objective evidence, defense theory, they inculcate him all over the place. Sorry. Consistent with what I'm saying on appeal, which is that the words out of their mouth proved nothing because our theory is the three got together and figured out, we're going to say it wasn't UTM, but rather it was Mr. Ballard. So then you get to the objective evidence is the objective evidence is what's potentially going to push it over the edge and needs to push it to certainty. The government relies principally on the phone call, the monitor phone call on December 12th and they included in the government's appendix and I'd refer the court to look at it carefully because what it really reads to me when I read it is the boyfriend angle because it's clear there was the boyfriend and the boyfriend is now had a girlfriend who has been institutionalized hurt. He's saying yes, yes, yes, and yes, he's, he's placating her. And in terms of deciding, is that sure you could read it the way the government does and that's typically what we do when we're looking at acquittal, et cetera. But it doesn't have to be read that way. In terms of his responses, the relatively ambiguous, if you look at it objectively in terms of whether he actually admits anything, he's just saying yes dear, in part to go ahead and try to get her out and make her feel better because the last time they were together, she cut herself. So that was one piece. They also point to the fact that obviously there are back page posts. The fact that they're back page posts and three of them ended up using my client's phone number is consistent with that. That's all November 17th and November 22nd. So that's after the argument. That's after she's angry at my client. That's after she wants to go ahead and set my client up for failure on this thing and try to go ahead and absolve herself of guilt on it. So, and it's just really suspicious that those are the only three that used his phone number in terms of a contact number. And so yes, construed in the light most favorable to the government, but construed objectively, those things are not enough to get to the certainty level. So thank you. We've got some extra time, but you've reserved some time as well. Thank you. May it please the court, Stephen Clymer from the United States. I'm accompanied today by Niroslav Lovrik, who is the government counsel at trial. I'll focus on the due process claim that Mr. Ballard's counsel discussed in his argument. Principally, I want to point out to the court that there really was no doubt that there would have been a conviction in this case, but for the remarks, both the ones that the government conceded are improper and the ones the defense alleges were improper that we dispute. One of the statements that you concede was improper was an implication that there might be other evidence that was kept out by the federal rules of evidence. How can that ever be harmless? Because your Honor, first of all, the court immediately instructed the jury after that comment that it should only consider the evidence in the case, nothing else. Well, but yeah, that's like saying don't think about the elephant in the room. The prosecutor has now told the jury that there's other stuff out there that I can't tell you about that I'd like to tell you about. My goodness, isn't that by its very nature prejudicial to the defendant? Isn't that harmful beyond a doubt? I don't think this court's cases say when that's the misconduct, the third part of the test no longer matters. I think the court still has an obligation to look at the strength of the evidence. Then isn't your argument essentially that in a really strong case, when you've got really good evidence against a really bad guy, the prosecutor should pull out all the stops and argue everything he can possibly argue, good or bad, fair or unfair, because he wants belt and suspenders to get a conviction? Absolutely not, Your Honor. Why not? For a couple reasons. Number one, I would never suggest to a prosecutor that he or she do that. Wouldn't we be suggesting that? It's not my argument. Number two, there are other means of the government and the court sanctioning misconduct by prosecutors other than to make victims of a crime have to come back in and testify. In Monica, in Elias, in Millard, this court has said that reversal of a conviction based on prosecutor misconduct is an ill-suited means of addressing that harm. It's not my argument, Your Honor. I think it's this court's position that the court will not reverse when conviction is certain. So it might be the case that a prosecutor in the situation you hypothesize can do what you suggest and not risk a reversal, but there are still ways to address that sort of conduct. And I'd suggest here, this is a case where conviction was certain, and I'd like to address that if I may. Before you do, and I know, but since it's the third point, I just want to ask you about your reliance on the judge's instruction for the conceded error insinuating that there was greater evidence. You said that the judge told the jury that they should only consider the evidence in the record. My concern that I want you to address is that, does that adequately deal with the concern about what the government did? The government made its argument to respond to the defense argument that it had not put in certain evidence, that there was absent evidence on a variety of things, and that that should give rise to a reasonable doubt. And the prosecutor suggested, well, we've got more evidence. I mean, that's looking at it in the light most favorable to the defense. Did the court have to do more? Did it have to tell the jury that consider only the record evidence, and if that evidence is not enough to persuade you beyond a reasonable doubt, then you must acquit? I will concede, Your Honor, that that would have been a better response than the one given. Did the court have to do that? I think it wasn't required under your test, nor am I certain it was required here because, of course, the judge's closing instructions gave that very instruction. The court, in the general instructions, juries are always told they can only convict. Am I right that that instruction came before the summations, though? That's correct, Your Honor. So it's not as if the jury heard this after the judge gave, after the instruction to kind of put aside the whole government argument? That is correct, Your Honor. Although it's not clear to me that because the instructions come before rather than after, the jury is less inclined to listen to the instruction even if the error occurs after the instructions are given. One could certainly argue that the jury is better equipped to understand what's going on when it hears the judge's perhaps not perfect instruction later, having heard the general instructions before. So- All right, I interrupted you. You wanted to tell us why conviction was inevitable. Okay, so uncontradicted evidence showed the following. The base of operations for this prostitution ring was the defendant's apartment. He's a 23-year-old man. He's dealing with high school girls. The defendant, according to both AW and AG, two of the victims, said that he was the one that explained to them how the ring's going to operate. How they pay him, how he protects them, how everything works. Ballard is the one who took at least some of the lurid pictures that were posted on this back page. And how do you prove that? Well, at the time he took some pictures, the only two victims involved were TM and AW. The first and the second of the two victims. The third hadn't gotten involved. And there were pictures with those two people in it. So hypothetically it's possible that some third party, we don't know about it, took it. But there's no testimony to that effect. The only testimony from both of those victims is he's the one who took those pictures. So at least some of the pictures were taken by him. In addition to that, he occasionally posted the ads online. There was some testimony that TM typically did it. But at one point she's in the hospital, as counsel concedes, she's in the hospital. When she's in the hospital with no access to a phone apparently from the testimony in the case, somebody using his telephone number now for the first time, because she's no longer available, is posting ads with his phone number in them on back page. In addition to that, he was the one who was going to provide protection, both at the apartment and elsewhere, when they met with the Johns. He received- According to the minor victim. Multiple victims, not just one of them. They all say- I understand that, but you heard your adversary argue that he thinks all of their testimony should not be factored into this. I know you disagree, but that is their argument. And I'm going to get to the frame up story in a minute, Your Honor. In addition to that, he received 50% of the proceeds from everybody. More importantly, this was his livelihood. He didn't work anywhere. He had an apartment, he had clothing, he had food. The ones that paid for that were the ones who were doing the work, these three minors who were working for him. So, as you pointed out, Your Honor, this testimony was not, or this was established not simply by the testimony, three consistent, testimony of three consistent victims. It was also by the phone call where he says to her, I'm not going to post you anymore. What else in the world could he be talking about but for the fact that in the past, he had posted her as an advertisement, whether as a widget or a piece of meat, or as a prostitute, on this back page website. That was his statement, I'm not going to post you anymore. So what's the defense to all this? Well, the first defense is, well, victim number one, TM, had been doing this before I met her. And the answer to that, of course, is so what? It doesn't give him the right to use her as a prostitute, despite the fact that she may have done it before. So it had no bearing whatsoever as guilt. It was not a defense that a rational jury could seize on to acquit him. The second argument is the three victims framed. There's no explanation for why all three of them did that. There's no explanation for when all three of them did that. There's no explanation for how all three of them did that. In fact, this idea of a frame up doesn't come up in cross examination of victims two and three when they testify. It only comes up, it springs up during argument in the case. And there's no meaningful evidence at any point to suggest that they got together and do it. Victim one apparently got the motive to do the frame up when she was hospitalized. But at that point, she's not accessible to the other two victims. So it's not clear how this frame up ever worked. It's never explained. In fact, it was all pure speculation. In short, there was nothing that the defense presented that would have caused a reasonable jury to have any hesitation here about convicting. So yes, were there improprieties in the government's argument? There were, and we have acknowledged that. And we take that very seriously. And we will continue to take that very seriously. But under this court's test, unless there is a question about whether conviction was certain. And here I would suggest to you there was none. The appropriate means to address that is not for a retrial, it's to address it in other ways. And I would suggest to the court that's the appropriate response. What would that be? Give us an example of what you think would be an appropriate way. Your Honor, I can't go into personnel matters within my office. But I can tell you that we have a process where if we believe there's been prosecutorial misconduct, we refer that matter to the Office of Professional Responsibility at the Department of Justice. And they do a very thorough investigation. Unless the court- What can we do? What's that got to do with us? Well, first of all, Your Honor, I think what it has to do with you is it should give you some confidence that these matters are addressed. I will also tell you that I do a substantial amount of the training at our office. The last time I was in court here, actually I won't say last time, previously I was in court when there was a concern in a case about the admission of hearsay evidence. At our next district-wide training session after that, I talked about the decisions of this court that involved that. Believe me, I intend to give a presentation at our next district-wide training session about what's proper and what's improper in closing argument. But isn't the best way for us to send a message reversing? According to your own decisions, Your Honor, that's the worst way to do it. The decisions say that reversal is ill-suited as a remedy for past misconduct under these circumstances. And I'm not sure it's the right thing to do to make these three minor victims relive this experience because a prosecutor stepped over the line and revived it. Thanks very much. Mr. McLaughlin's reserve some time. Just briefly, obviously I have a client 23 years old, 24 years old at the time. This is serving 210 months in prison. And so if Your Honor's determined that under the three prongs, reversal is appropriate, then obviously we're asking for that. The government, in terms of focusing on the certainty of conviction, went through the following list, and I just want to briefly respond to that. So first of all, they say the base of the operations is defendant's apartment. That's where TM and D and the defendant live. It was their apartment together. Yeah, the lease is in his name because he's the one who's of age, but they were living together as boyfriend and girlfriend. So there's not a lot. It's a pretty extensive prostitution operation. Are you suggesting your client was ignorant of it? Or that he was divorcing himself from it in some way? This does become somewhat implausible, particularly with what counsel pointed out about the giving of the number while TM is in the hospital. And if I understood the record right, I'm sure you'll correct me if I'm wrong, posting that specifically provided for his number to be the contact point for people who wanted to set up prostitution encounters. Which defense counsel below ably argued that the fact that this number was given out from our position, a third party. Therefore, a lot of calls came in to him or texts came in to them. There was zero evidence that he ever responded to them. There was zero evidence he ever tried to do anything with them. There might be some merit to that argument if he then actively tried to go ahead and use that for prostitution. But the fact that somebody put his number, and we've thankfully not been victims in this case in terms of our number being given out wrongly. He ends up receiving a lot, and that's what you see, but he never actively does anything on it. So in terms of implausibility, Your Honor. You're saying there's no evidence of the act. Correct. They're saying he's the one who put it on. Right. While TM was in the hospital, is it your position one of the other minors put his number up? Yes. Because, so November 17th is the day that she hurt herself. November 17th is the day that got her- And one of the other minors put up your client's name and number at that point. My understanding is that the first one of those three back page postings, the first one was on November 17th before she went to the hospital. I don't have the exact time, I think it was like 7.50 PM. So that was, I'm mad, I'm in an argument, I'm putting it up by TM. November 22nd, when she's in the hospital, at what point this conspiracy between the three of them started, and at what point they're able to communicate, obviously we don't have the answers to all that. But sure, at that point, she's in the hospital, she's trying to protect herself, she's friends with AW who's friends with AG. And yes, our position is at that point that they were able to communicate, I started this, I'm blaming him, and we're going to continue to do it. Now you don't have any evidence, you're just hypothesizing that, right? Hypothesizing the same way the government's hypothesizing in terms of the whys here. My client- He had possession of his phone during this point. You don't have any evidence that any of them had possession of his phone? Correct. Okay. My client, I'm not suggesting that he was not aware of what TM was doing. And I don't know the legal answer to whether if he's boyfriend with TM, and TM is doing this, and he's begrudgingly accepting it. I mean, obviously there are many other things that different people would and should do, but if he's begrudgingly accept that, whether he is committing the crime. And taking money from it. And having her go ahead and contribute towards food for the two of them, his boyfriend and girlfriend, and contribute towards payment of the house. It wasn't tried as that case. It was tried as he's the pimp, and so therefore, clearly he's violating the statutes. I don't know, and I haven't researched, and I apologize, whether the begrudging boyfriend who she's off on her own, she's doing this. And yes, it ends up paying for something for the roof over her head, whether that constitutes a violation of the statute. I don't know whether it does. I'm not suggesting that he didn't know that she was doing it. That would be incredible. But in terms of whether she's the one leading it, she's the one bringing AW and AG into it. From our position, the evidence is consistent with that, or consistent enough with it that this court should go ahead and determine that there's guilt beyond certainty. Thanks very much. Thanks very much. Mr. McLaughlin. Well argued on both sides, and we're pleased to have heard you. We reserve decision and we'll